1   Rose M. Zoia ◆ sbn 134759

2   Law Office of Rose M. Zoia

3   50 Old Courthouse Square, Suite 401
    Santa Rosa CA 95404

4   ph  707.526.5894
    fax 707.526.5895

5   Attorneys for Plaintiff Rohnert Park Citizens to Enforce CEQA

6

7

8          **UNITED STATES DISTRICT COURT FOR**

9          **THE NORTHERN DISTRICT OF CALIFORNIA**

10

11

12

13  ROHNERT PARK CITIZENS TO            CASE NO. C 007-4607 TEH
    ENFORCE CEQA, and DOES 1 through 5,
    inclusive,

14
                    Plaintiff,

15  v.                                  **OPPOSITION TO DEFENDANT**
                                        **CALTRANS' MOTION TO DISMISS**

16  CALIFORNIA DEPARTMENT OF

17  TRANSPORTATION, UNITED STATES
    DEPARTMENT OF TRANSPORTATION,

18  FEDERAL HIGHWAY ADMINISTRATION,     Date: June 2, 2008
    and DOES 6 through 10, inclusive,

19                                      Time: 10:00 a.m.
                                        Ctrm: 12, Hon. Thelton E. Henderson

20                  Defendants.
    _____/

21

22

23

24

25

26

27

28
                                        _____
                                        Opposition to Motion to Dismiss

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    This Court Has Supplemental/Pendent Jurisdiction Over the State Law
      Claims Since the State-Based Issues Derive from the Same Operative
      Facts as the Federal Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.    The Eleventh Amendment Does Not Abrogate this Court's Jurisdiction
      over the CEQA Claim Against Caltrans . . . . . . . . . . . . . . . . . . . . . . . . . 8

C.    The Motion Should Be Barred as Untimely  . . . . . . . . . . . . . . . . . . . . . . 14

V. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

1

2
**Case Law**

3
*Alden v. Maine*, 527 U.S. 706 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4
*Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342

5
        (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6
*Cholla Ready Mix, Inc. V. Civish*, 382 F.3d 969 (9th Cir. 2004)  . . . . . . . . . . . . . 9

7
*Committee to Save Mokelumne River v. East Bay Municipal Utility District*,

8
        13 F.3d 305 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9
*Deere and Co. V. Diamond Wood Farms, Inc.*, 152 F.R.D. 158

10
        (E.D. Ark. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11
*Edelman v. Jordan*, 415 U.S. 651 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12
*Ex parte Ayers*, 123 U.S. 443 (1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13
*Ex parte Young*, 209 U.S. 123 (1908)  . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 13, 14

14
*Florida Department of State v. Treasure Salvors , Inc.*,

15
        458 U.S. 670 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

16
*Freeman v. Oakland Unified School Dist.*, 179 F.3d 846 (9th Cir. 1999) . . . . . . . 14

17
*Green v. Mansour*, 474 U.S. 64 (1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18
*Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19
*Mancuso v. New York State Thruway Authority*,

20
        909 F.Supp 133 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

21
*Natural Resources Defense Council (NRDC) v. California Department of*

22
        *Transportation*, 96 F.3d 420 (9th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . 9, 12

23
*Pennhurst State School and Hospital v. Halderman*,

24
        465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

25
*Quern v. Jordan*, 440 U.S. 332 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

26
*Smith v. K-Mart Corp.*, 899 F.Supp.503 (E.D. Wash. 1995) . . . . . . . . . . . . . . . . . 4

27

28

*Stanley v. Trustees of the California State University*, 433 F.3d 1129
     (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . . . 4, 5

*Viacom Int'l, Inc. V. Kearney*, 212 F.3d 721 (2nd Cir. 2000) . . . . . . . . . . . . . . . . 5

*Vreeland v. Ethan Allen, Inc.*, 828 F. Supp. 14 (S.D.N.Y. 1993) . . . . . . . . . . 6, 7


**U.S. Constitution**
Article III of the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**Statutory Law**
28 U.S.C § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
28 U.S.C § 1367, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
28 U.S.C § 1367, subd. (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
28 U.S.C § 1367, subd. (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**Rules**
Federal Rules of Civil Procedure
     12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Local Rule 16-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Opposition to Motion to Dismiss

## I.  INTRODUCTION

Defendant California Department of Transportation (Caltrans) seeks dismissal of RPCEC's case against the State pursuant to Federal Rules of Civil Procedure, Rule (b)(1) for lack of subject-matter jurisdiction and, alternatively Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

Six month prior to the filing of this motion, Plaintiff Rohnert Park Citizens to Enforce CEQA (RPCEC) filed a mandamus action in this Court challenging the Caltrans processing and alleged approval of the Wilfred Avenue Interchange Project (the project) in violation of the California Environmental Quality Act (CEQA) and, as an agency of the Federal Department of Transportation (DOT), the Federal Highway Administration's (FHWA) (collectively the federal defendants) processing and approval of the project in violation of the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA).  The project proposes to modify an interchange in Sonoma County to connect Wilfred Avenue to Golf Course Drive by an undercrossing under Route 101 and anticipates the widening and realignment of Route 101 for car pool (HOV) lanes from the Rohnert Park Expressway Overcrossing to the Santa Rosa Avenue Overcrossing.

However, the joint Negative Declaration/Finding of No Significant Impact (Neg Dec/FONSI) issued by both the state and federal agencies failed to take into account traffic from the Graton Rancheria Casino and Hotel Project proposed to be located less than one mile west of the project.  Thus, the remedy RPCEC requests consists primarily of injunctive relief ordering the federal defendants and Caltrans to set aside and void their respective action related to the project and to reconsider the project based on an

//

1  EIS/EIR that takes into account casino traffic in compliance with NEPA, CEQA and all

2  other applicable laws.

3      There is no dispute that this Court has pendent or supplemental jurisdiction over

4  Caltrans and the CEQA claims.  However, Caltrans claims sovereign immunity based on

5

6  the Eleventh Amendment.  The motion should be denied because the relief claimed is

7  prospective injunctive relief, thus protecting the state coffers from federal intrusion, as

8  intended by the Eleventh Amendment.  Also, Caltrans' motion should be barred as

9  untimely based on local and federal rules.

10
## II.  STATEMENT OF THE ISSUE
11
Whether the Eleventh Amendment deprives this federal court of pendent
12
13  jurisdiction over Caltrans for alleged violations of CEQA state law.

14
## III.  STATEMENT OF FACTS
15      In July 2004, Caltrans and the federal defendants released a joint Initial

16  Study(CEQA)/Environmental Assessment (NEPA) (IS/EA).  The IS/EA did not discuss

17  the Graton Rancheria Casino and Hotel Project, an approximately 762,000 square foot

18
   gaming and entertainment facility within one mile from the proposed project initiated by
19
20  the Federated Indians of Graton Rancheria to be developed and managed by Station

21  Casinos, Inc.  A second joint IS/EA, issued in June 2005, also did not discuss the

22  casino.  (Declaration of Rose M. Zoia, ¶ 2.)

23      In November 2006, Caltrans and the federal defendants published a joint

24  "Negative Declaration/Initial Study (CEQA) Environmental Assessment/Finding of No

25  Significant Impact (FONSI) (NEPA)" which also did not discuss the casino.    (Dec. Zoia,

26
   ¶ 3.)
27
28  //

1    On September 6, 2007, RPCEC timely filed this mandamus action challenging

2 Caltrans' processing and alleged approval of the project in violation of CEQA and the

3 federal defendants' processing and approval of the project in violation of NEPA and the

4 Administrative Procedure Act (APA).[1]  (Dec. Zoia, ¶ 4.)      In its Complaint, RPCEC

5

6 claims that this Court has jurisdiction pursuant to Sections 1331 and 1361 of Title 28 of

7 the U.S. Code because the complaint alleges violations of NEPA and the APA, both

8 federal laws, and seeks to compel the federal defendants to perform duties owed to

9 RPCEC, its members, and other members of the public.  The Complaint also alleges

10 that this Court has jurisdiction pursuant to Section 70l et seq. of Title 5 of the U.S. Code,

11

12 because the pleading seeks judicial review of the action taken by one or more agencies

13 of the United States. Further, the Complaint states that this Court has jurisdiction

14 pursuant to Section 2201 of Title 28 of the U.S. Code, because RPCEC seeks

15 declaratory relief against the federal defendants.  The Complaint also alleges

16 supplemental/pendent jurisdiction over the state CEQA and PRA claims which are

17 inextricably joined with the federal NEPA claim.  (Dec. Zoia, ¶ 5.)

18

19    RPCEC requests a peremptory writ of mandate Caltrans and the federal

20 defendants to set aside and void their joint approvals to reconsider the project based on

21 an EIS/EIR that takes into account casino traffic in compliance with NEPA, the APA,

22 CEQA, and all other applicable laws.  (Dec. Zoia, ¶ 6.)   The federal defendants filed an

23 Answer on November 14, 2007.  Caltrans' has not filed an answer, but filed the subject

24 motion to dismiss six months after the complaint was filed.  (Dec. Zoia, ¶ 7.)

25 //

26

27 _____

28    [1] The Complaint also alleges a cause of action against Caltrans for violations of
   the California Public Records Act.

_____
Opposition to Motion to Dismiss

1

## IV.  ARGUMENT

2

**A.    This Court Has Supplemental/Pendent Jurisdiction Over the State Law Claims Since the State-Based Issues Derive from the Same Operative Facts as the Federal Issues.**[2]

3

4

Supplemental jurisdiction exists to allow federal courts' to exert subject matter

5

6 jurisdiction over state law claims that derive from a common nucleus of operative fact,

7 such that the relationship between the federal claim and the state claim permits the

8 conclusion that the entire action before the court comprises one case, and such claims

9 that involve the joinder or intervention of additional parties.  (28 U.S.C § 1367; *United*

10 *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).)  Put another way, pendent

11

12 jurisdiction is a description of a court's exercise of jurisdiction to hear a claim for which

13 there is no independent basis for federal jurisdiction but that arises out of a 'common

14 nucleus of operative fact" with a properly asserted claim that does fall within the federal

15 'court's original subject matter jurisdiction.  (*See Smith v. K-Mart Corp.*, 899 F.Supp.503,

16 506 (E.D. Wash. 1995).

17

18 This statutory creation allows a federal court to exercise jurisdiction over claims

19 that are not within the court's original jurisdiction but are related to claims over which the

20 court does have original jurisdiction and when the court has made a discretionary

21 determination that the values of judicial economy and convenience make it appropriate

22 to exercise jurisdiction over the claims.

23 When deciding whether to exercise supplemental jurisdiction the court must

24 consider the circumstances of the particular case, the nature of the state law claims, the

25

26

---

27      [2]  Prior to the enactment of the supplemental jurisdiction statute, the terms used for this jurisdiction were "pendent" and "ancillary" jurisdiction.  *See Borough of West*
28 *Mifflin v. Lancaster 45 F.3d 780, 788* (3rd Cir. 1995).

1  character of the governing state law, and the relationship between the state and federal

2  claims.  Subsection (a) of 28 U.S.C § 1367 contains the broad grant of supplemental

3  jurisdiction, subject only to limited exceptions provided in subsections (b) and (c),, or as

4  expressly provided otherwise by federal statute. It provides that in any civil action in

5

6  which the district court has original jurisdiction, it also has supplemental jurisdiction over

7  all other claims that are so related to claims in the action within original jurisdiction that

8  they form part of the "same case or controversy" under Article III of the United States

9  Constitution, and that supplemental jurisdiction includes the joinder or intervention of

10 additional parties.

11
        Recent cases suggest that if either the "same case or controversy" or the

12 "common nucleus of operative facts" tests are met, the court must exercise

13
   supplemental jurisdiction. (*See Viacom Int'l, Inc. V. Kearney*, 212 F.3d 721 (2nd Cir.

14

15 2000).)  Thus, courts have held that because of the use of the mandatory term "shall" in

16 the supplemental jurisdiction statute, a federal court *must* exercise supplemental

17 jurisdiction when it has that jurisdiction, unless one of the exceptions of subsection ©)

18 applies.[3]  (*Deere and Co. V. Diamond Wood Farms, Inc.*, 152 F.R.D. 158, 160 n.1 (E.D.

19 Ark. 1993), *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir.

20

21 1997).)

22
        In order to decide whether a plaintiff would ordinarily be expected to try both the

23 state and federal claims in one judicial proceedings, the Supreme Court in *United Mine*

24 ─────────────────

25    [3] Subsection (c) of 28 U.S.C. Section 1367 codifies the discretionary factors that
   justify a court's refusal to exercise supplemental jurisdiction, to wit, (1) the claim raises
26 a novel or complex issue of State law, (2) the claim substantially predominates over the
   claim or claims over which the district court has original jurisdiction, (3) the district court
27 has dismissed all claims over which it has original jurisdiction, or (4) in exceptional
   circumstances, there are other compelling reasons for declining jurisdiction.  None of
28 these factors are present in this case.

────────────────

Opposition to Motion to Dismiss

1    *Workers, supra*, applied the following principles:  First, the federal claim has to be

2    substantial enough to vest the district court with subject matter jurisdiction. Second, the

3    district court may have jurisdiction over the state law claim if the relationship between

4    the federal claim and the state claim permits the conclusion that the entire action before

5    the court comprises but one constitutional case.  This is so if the federal and state

6    claims, "derive from a common nucleus of operative fact" and if "considered without

7    regard to their federal or state character, a plaintiff's claims are such as he would

8    ordinarily be expected to try them all in one judicial proceeding."  More specifically, lower

9    courts have found that when the same conduct or inaction violates parallel federal and

10   state laws, the claims clearly satisfy the common nucleus of operative facts test.  (*See*

11   *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995); *Vreeland v. Ethan Allen, Inc.*, 828 F.

12   Supp. 14, 15 (S.D.N.Y. 1993).)  Thirdly, the *United Mine Workers* Court emphasized that

13   the discretion of the court to grant supplemental/pendent jurisdiction must be exercised

14   by weighing considerations of judicial economy, comity, convenience, and fairness to

15   litigants.

16          The case at bar meet each of the elements set forth above with respect to

17   supplemental jurisdiction of the CEQA claims.  First, the federal claim is strong enough

18   to vest this district court with subject matter jurisdiction.  The project involves realigning

19   and widening of U.S. Highway 101, which places it under the auspices of the FHWA.

20   The total project cost of $47.8 million is to be funded by the federal Regional

21   Transportation Improvement Program.  (Dec. Zoia, ¶ 8.)          Second, all of the facts and

22   issues in dispute derive from a "common nucleus of operative facts" because there is

23   only one project, located in one physical location, and one set of indivisible joint

24   state/federal documents, i.e., the July 2004 IS/EA; the June 1995 IS/EA and the

Opposition to Motion to Dismiss

1  November 2006 Neg Dec/FONSI. The Neg Dec/FONSI is one document reviewing the

2  environmental ramifications of one project, the parties are the same, and the

3  administrative records overlap.  The relationship between the federal claims and the

4

5  state claims permits the conclusion that the entire action before the court comprises but

6  one case.  RPCEC claims that both Caltrans and the federal agency, by their joint

7  (in)actions, violated their respective environmental protection schemes, CEQA and

8  NEPA, by unlawfully processing and approving the same project.  Just as in the *Lyon*

9  and *Vreeland*, cases, *supra*, RPCEC is claiming that the same conduct or inaction

10  violated parallel federal and state laws. As such, the "common nucleus of operative

11  facts" test is satisfied.

12

13          Third, considerations of judicial economy, comity, convenience, and fairness to

14  litigants compel a conclusion that pendent jurisdiction is warranted.  The briefing and

15  hearing on the merits involve exactly the same facts regarding the same project,

16  overlapping if not identical administrative records, and similar issues regarding the

17  failure of the agencies to consider the casino traffic in processing the joint environmental

18  documents.

19

20          Should this Court refuse supplemental jurisdiction over the state claims and they

21  were tried separately in the state superior court, the risk is that one court may rule that

22  the project met all of the environmental law requirements and may proceed, while the

23  other court rules that it did not and requires further environmental review.  The result

24  would be incongruous and would not meet the *United Mine Workers* standard of keeping

25  intertwined federal and state issues together in the same court for purposes of comity,

26  convenience and fairness to litigants.  The interests of justice and of judicial economy //

27  //

28

_____

Opposition to Motion to Dismiss

-7-

1   weigh heavily in having this Court retain the federal and state issues together for

2   litigation purposes.

3   **B.      The Eleventh Amendment Does Not Abrogate this Court's Jurisdiction over**
4   **the CEQA Claim Against Caltrans**

5           Defendants do not argue that this case meets the requirements for

6   supplemental/pendent jurisdiction.  Instead Caltrans posits that supplemental jurisdiction

7   does not apply here because the Eleventh Amendment prohibits federal courts from

8   adjudicating state law claims brought against a non-consenting state defendant.  With

9   many exceptions, the Eleventh Amendment grants sovereign immunity to the states

10  against suits in federal court and prevents subjecting a nonconsenting state to the

11  process of federal judicial tribunals at the initiation of private parties.  (*Ex parte Ayers*,

12  123 U.S. 443 (1887).)  However, the immunity provided by this constitutional

13  amendment is not cast in stone.  How broadly or how narrowly to interpret the Eleventh

14  Amendment immunity is not a settled question and the many different theories on this

15  
16  complex question, and the many exceptions to it, are reflected in the diverse decisions

17  handed down by the courts.

18  
19          The Eleventh Amendment is limited in scope by its language and by case law

20  interpreting that language. (*E.g.*, *Alden v. Maine*, 527 U.S. 706, 713 (1999).)  Under

21  Eleventh Amendment immunity jurisprudence, courts have recognized that there is no

22  Eleventh Amendment bar in three instances: (1) where the state has consented to suit;

23  (2) where the application of *Ex parte Young*, 209 U.S. 123 (1908), and its progeny is

24  
25  appropriate; or (3) where Congress has abrogated the state's immunity. It is undisputed

26  that the state has not consented to this suit; hence, we will address only the *Ex parte*

27  *Young* exception and the abrogation exception.

28

Opposition to Motion to Dismiss

1     In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does

2  not bar suit against a state official acting in violation of federal law.  Courts have further

3  distinguished lawsuits seeking prospective equitable relief, such as the injunctive

4  remedy sought by RPCEC, from lawsuits seeking money damages for past actions. The

5  reasoning behind this is that allowing an equitable action to proceed does not implicate

6  a judgment compelling the state to use its public funds in the state treasury to

7  compensate the plaintiff.  (*Edelman v. Jordan*, 415 U.S. 651, 667-669 (1974) (holding

8  that the Eleventh Amendment does not bar suit to compel future state compliance with

9  federal standards for processing welfare applications; but rejecting an injunction

10  ordering retroactive payment of previously owed benefits); *Quern v. Jordan*, 440 U.S.

11
12  332, 337  (1979) ("The distinction between that relief permissible under the doctrine of

13  *Ex parte Young* and that found barred in Edelman was the difference between

14  prospective relief on one hand and retrospective relief on the other.").  Therefore, an

15
16  injunction against the state officer is permitted, even if it might require substantial outlay

17  of funds from the state treasury, provided that it does not award retroactive relief for past

18  conduct.  (*Edelman*, 415 U.S. at 667 ("the difference between the type of relief barred by

19  the Eleventh Amendment and that permitted under *Ex parte Young* will not in many

20
21  instances be that between day and night").

22     Thus, in *Natural Resources Defense Council (NRDC) v. California Department of*

23  *Transportation*, 96 F.3d 420 (9th Cir. 1996); *Stanley v. Trustees of the California State*

24  *University*, 433 F.3d 1129 (9th Cir. 2006); and *Cholla Ready Mix, Inc. V. Civish*, 382 F.3d

25  969 (9th Cir. 2004), cited by Caltrans, the remedy sought was either damages or civil

26  penalties pertaining to past violations.  In the instant case, plaintiff seeks only

27
28  prospective injunctive relief.

Opposition to Motion to Dismiss

1    In *Mancuso v. New York State Thruway Authority*, 909 F.Supp 133 (S.D.N.Y.

2  1995), a citizens group brought suit under the Clean Water Act alleging that the NYSTA

3  and city had violated the Act by discharging pollutants into a bay.  The citizens sought

4

5  monetary damages for alleged past harm and prospective injunctive relief preventing

6  future unlawful discharges, i.e. an injunction to stop the pollution.  The court held

7    In this case the plaintiffs seek monetary damages for alleged past harm as well
      as prospective injunctive relief. The Eleventh Amendment prohibits a suit from
8      being brought against a State or its agencies in federal court unless the State
      consents to be sued or unless Congress unequivocally abrogates the immunity.
9      An exception to the Eleventh Amendment's grant of sovereign immunity allows a
      suit to be brought against the State for prospective injunctive relief of a continuing
10     violation of federal law. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714
      (1908). This Court has the jurisdiction and power to enjoin NYSTA from future
11     violation of the CWA if at trial it is found to be in violation. Plaintiffs seek such
12     injunctive relief to stop the pollution.

13 (*Id*. at 135.)

14    In *Committee to Save Mokelumne River v. East Bay Municipal Utility District* 13

15  F.3d 305 (1993), an environmental group brought a Clean Water Act action against a

16  municipal utility district and members of a regional water quality control board alleging
17

18  that a mine facility discharged pollutants and sought  declaratory and injunctive relief

19  enjoining defendants from discharging pollutants from the facility until they obtained a

20  proper permit.   The court held that since the Committee sought only prospective

21  equitable relief, it was not barred by the Eleventh Amendment from bringing suit against

22  members of the water quality control board.  "Furthermore, none of the authorities cited

23

24  by defendants prohibit the district court from considering defendant's past conduct as it

25  related to ongoing or future violations.  Thus, defendants' Eleventh Amendment

26  argument is without merit."  (*Id*. at 310; *see also Florida Department of State v. Treasure

27  Salvors , Inc*., 458 U.S. 670 (1982) (Relief sought (possession of specific property) was

28

1  not barred by the Eleventh Amendment because it did not seek any attachment of state

2  funds and would impose no burden on the state treasury.)

3        Although the *Mancuso* and *Mokelumne River* cases dealt with federal law claims

4  against state agencies and officials, the basis of each court's decision was remedy

5  based.  The courts' decisions did not revolve around whether the claims were based on

6  state law or federal law.  The most important factor and the nexus between the two

7  cases was that plaintiffs were requesting prospective equitable relief, not monetary

8  damages.  Likewise, in the instant case RPCEC seeks only prospective equitable relief

9  against Caltrans and the federal defendants.  California taxpayer funds from the state

10  treasury are not at risk here. The reasoning behind why the courts delineate between a

11  plaintiff who asks for damages against a state agency in federal court and one who

12  requests only prospective relief is to protect the State coffers from federal authority.

13  When there is no damages award against the State treasury to protect, one of the main

14  tenants behind Eleventh Amendment immunity to the states disappears.

15        Moreover, RPCEC's claims against Caltrans and the federal defendants are

16  essentially one inextricably intertwined claim involving one project and one

17  environmental document.  Essentially, the federal defendants are providing the funding

18  and Caltrans is doing the construction work. In both the state and federal claims,

19  RPCEC alleges that each agency has failed to proceed in the manner required by law

20  because its actions and/or decisions did not substantially comply with the requirements

21  of CEQA and NEPA.   The outcome with respect to the NEPA claim directly affects

22  Caltrans and the outcome with respect to the NEPA claim directly impacts the federal

23  defendants.   As such, a judgment against the federal defendants acts, as a practical

24  //

25

26

27

28

1   matter, as a judgment against Caltrans.  Thus, because the only relief sought is

2   equitable relief, this Court may take jurisdiction over the state CEQA claim.

3         In *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984),

4   heavily relied upon by Caltrans, a resident of Pennhurst State School and Hospital, a

5   Pennsylvania institution for the care of the mentally retarded, brought action in federal

6   court against Pennhurst and various state and county officials alleging that conditions at

7   Pennhurst violated the plaintiff class members rights under the Eighth and Fourteenth

8   Amendments; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the

9   Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §§

10  6001-6081and the Pennsylvania Mental Health and Mental Retardation Act of 1966

11

12  (State Act).  Both damages and injunctive relief were sought. In a 5-4 decision[4], the

13  Court held that the Eleventh Amendment barred suit against state officials on the basis

14

15  of state law.  However, as explained, a critical distinction between the *Pennhurst* case,

16  and others of the same ilk, is that the federal and state claims are distinct and

17  separable.  As such, the federal court ruling on the federal claims would not necessarily

18  create a situation where a concurrent state court ruling on the state claims could create

19  directly conflicting results.  For example, in *Pennhurst*, the federal court decision based

20  on the federal laws would not be in conflict with a state court decision on the State Act.

21  In this case, however, this Court's decision on the NEPA claims could be 180 degrees

22  different from a state court ruling on the CEQA claims.  For instance, this Court may rule

23

24  that the federal agency proceeded improperly under NEPA and order the project

25  approvals set aside.  At the same time, a state court could decide that Caltrans acted

26

27

28  _____

    [4] Justice Stevens, Justice Brennan, Justice Marshall, and Justice Blackmun
    dissenting.

1  lawfully under CEQA and uphold the project approvals.  The conflict would be enormous

2  and insurmountable since the approvals passed upon by the respective courts are

3  based on the exact same environmental document and the exact same project.

4
        Another exception to the Eleventh Amendment involves seeking equitable relief
5
   against state officials in federal court.  The exception is based on the theory that the
6
7  official acted beyond the scope of his statutory authority or, if within that authority, that

8  such authority is unconstitutional.  (*Green v. Mansour*, 474 U.S. 64 (1985); *Florida*

9  *Department of State v. Treasure Salvors, Inc.*, *supra*.)  In *Natural Resources Defense*

10 *Council*, *supra*, the issue was whether the district court correctly held that as a California

11
   state official, the Director of Caltrans is subject to suit in federal court for violations of the
12
13 federal Clean Water Act.  The 9th Circuit held that the Eleventh Amendment did not

14 preclude claims against the director pertaining solely to prospective injunctive relief in

15 federal court.  (96 F.3d at 423.)  As explained in *Nelson v. Miller*, 170 F.3d 641 (C.A.6

16 Mich 1999)

17
       Whether a suit against State officials in their official capacity is deemed to be
18     against the State depends on whether the plaintiff seeks 'retroactive' or
       'prospective' relief." [Cite.]  When the relief sought is "retroactive," it usually takes
19     the form of money damages, and thereby significantly implicates the
       governmental entity itself. In such an instance the "official capacity claim ... is
20     deemed to be against the State whose officers are the nominal defendants, [and]
       the claim is barred by the Eleventh Amendment." [Cite.] On the other hand, when
21     the relief sought is prospective injunctive relief that would "merely compel[ ] the
       state officer['s] compliance with federal law in the future," id., then such a request
22     "is ordinarily sufficient to invoke the *Young* fiction." [Cite.]
23
24 (*Id*. at 646.)  The *Ex Parte Young* exception provides that the Eleventh Amendment's

25 grant of sovereign immunity does not bar a suit challenging a state official's acts when

26 prospective injunctive relief is the remedy.  Thus, if this court is inclined to granting

27 Defendant's Motion to Dismiss, RPCEC requests leave to file a First Amended

28

                                                                    Opposition to Motion to Dismiss

1  Complaint naming individual official(s) of Caltrans as defendants. The Court can then

2  follow the dictates of *Nelson*, *supra*.

3  **C.      The Motion Should Be Barred as Untimely.**

4

5         FRCP 12(b) states that

6         Every defense to a claim for relief in any pleading must be asserted in the
        responsive pleading if one is required.  But a party may assert the following
7         defenses by motion:

8         (1) lack of subject-matter jurisdiction,
                                                        * * *
9         (6) failure to state a claim upon which relief can be granted**.**

10
        A motion asserting any of these defense must be made before pleading if a
11        responsive pleading is allowed.

12        Thus, this motion must have been made "before pleading."  Local Rule 16-5

13  states that "[i]n actions for District Court review on an administrative record, the

14  defendant must serve and file an answer [i.e., a pleading] together with a certified copy

15

16  of the transcript of the administrative record, within 90 days of receipt of service of the

17  summons and complaint."  Therefore, the proper time for this motion was prior to the

18  expiration of the 90 days for filing the answer (pleading).  RPCEC objects to this motion

19  on the grounds timeliness as it was served six months after service of the summons and

20  complaint.

21                          **V.  CONCLUSION**

22
        To borrow language from *Ex parte Young* on a related issue, to dismiss Caltrans
23
24  would create "an injury to complainant to harass it with a multiplicity of suits or litigation."

25   (*Id*., 209 U.S.  at 160.)   To force plaintiffs to file concurrent and nearly identical lawsuits

26  in both federal and state courts taxes the equitable and judicially-efficient mind.  Thus,

27  *//*

28

_____

1  given the facts of the present case, dismissal based on the Eleventh Amendment is not

2  warranted.

3        For the reasons stated above and at the hearing on this matter, Plaintiff Rohnert

4  Park Citizens to Enforce CEQA respectfully request that this Court deny Caltran's

5

6  motion to dismiss. Should the Court grant the motions, plaintiff requests that it be

7  without prejudice so that plaintiff may reassert its claims in a competent court.

8  (*Freeman v. Oakland Unified School Dist.*, 179 F.3d 846, 847 (9th Cir. 1999).)

9

10 Dated: May 12, 2008                    Law Office of Rose M. Zoia

11

12                                       _____/s/_____
                                         Rose M. Zoia
13                                       Attorney for Plaintiff Rohnert Park Citizens to
                                         Enforce CEQA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
Opposition to Motion to Dismiss