IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROHNERT PARK CITIZENS TO
ENFORCE CEQA,

                 Plaintiff,

    v.

UNITED STATES DEPARTMENT
OF TRANSPORTATION *et al.*,

                 Defendants.

NO. C 07-4607 TEH

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

    This matter came before the Court on Monday, December 8, 2008, on the cross-motions for summary judgment of Plaintiff Rohnert Park Citizens to Enforce CEQA and Defendants United States Department of Transportation and Federal Highway Administration.  Having carefully considered the parties' written and oral arguments, Defendants' Motion is GRANTED and Plaintiff's Motion is DENIED for the reasons set forth below.

**INTRODUCTION AND BACKGROUND**

    Plaintiff group Rohnert Park Citizens to Enforce CEQA ("RPCEC") is an association dedicated to protecting and preserving environmental resources in southern Sonoma County. This action concerns the Wilfred Avenue Interchange Project ("Project"), a highway project to widen and perform other construction on Highway 101 in the city of Rohnert Park in Sonoma County.  Plaintiff challenges the environmental determinations made by Defendant federal agencies under federal law, asserting that the agencies' environmental reviews failed to account for effects of a proposed casino to be located less than a mile away.  Plaintiff

United States District Court

For the Northern District of California

seeks to invalidate Defendants' Finding of No Significant Impact ("FONSI") for the Project and to compel Defendants to complete an Environmental Impact Statement ("EIS").

The Project is one of a series of improvements being made to the US 101 corridor in Sonoma and Marin Counties.  This particular project will involve the widening of the highway from four to six lanes over a stretch of 1.6 miles, and a modification to the highway interchange that will close the link with one street and create a new bridge linking two other streets.  Improvements of US 101 in Rohnert Park have been under discussion for close to twenty years.  The articulated goals of the Project are to reduce congestion, improve access and circulation between surface roads and 101, and upgrade the highway to current safety and design standards.  Traffic studies show that there is currently some congestion in the area at peak hours, which will reach unacceptable levels in approximately twenty years.

The National Environmental Policy Act ("NEPA") approval process for this project began in early 2004.  In July of that year, the Federal Highway Administration ("FHWA") and CalTrans issued a joint Initial Study (CEQA)/Environmental Assessment (NEPA) ("IS/EA").  The IS/EA explained the goals of the Project and analyzed potential impacts on an array of factors, including land use, growth, community character and cohesion, transportation options, traffic, aesthetics, air quality, cultural resources, floodplains, noise and vibration, water quality, and threatened and endangered species.  The IS/EA also mentioned the proposed casino project, and indicated that its environmental study was underway.  Admin. R., Tab 425, at 69-70, 79.  In 2004, FHWA and CalTrans consulted with the U.S. Fish and Wildlife Service to address potential impacts on the endangered California Tiger Salamander and three endangered plant species.  The agencies decided to complete a "Corridor Biological Opinion" to address impacts to the salamander caused by this and two other US 101 projects in the area.  CalTrans released its Negative Declaration under CEQA in June of 2005.  Admin. R., Tab 429.  The Fish and Wildlife report was not issued until October of 2006 and concluded that as "[c]ritical habitat has not been designated for the California tiger salamander or the three listed plants in Sonoma County[,] none will be

United States District Court
For the Northern District of California

destroyed or adversely modified by the proposed three Highway 101 projects." Admin. R., Tab 430, subtab 7, at 1.

FHWA issued its Finding Of No Significant Impact (FONSI) on November 6, 2006, which incorporated the updated information from CalTrans's 2005 report. Admin. R., Tab 430. It discussed the casino project in several places, including as part of its cumulative effects analysis. Admin. R., Tab 430, at 5, 21, 61-62, 159-73, 189. The FONSI concluded that the project would have no significant impact on the human environment, and would have some insignificant impact on the habitat and water quality of the salamander. In light of the FONSI, the Defendants decided not to complete an EIS.

On September 6, 2007, Plaintiff filed its Complaint for Declaratory, Mandamus, and Injunctive Relief, alleging three causes of action. The second and third of these were dismissed pursuant to Defendant CalTrans's Motion to Dismiss of April 1, 2008, which this Court granted in its order of May 21, 2008. The remaining cause of action alleges that the FHWA and the federal Department of Transportation ("DOT") approved the Project in violation of NEPA, 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Compl. ¶¶ 30-37. The Complaint seeks an order requiring the Defendants to set aside their decision and reconsider the project with an EIS that accounts more fully for the cumulative effects of the casino project. On July 17, 2008, the Court set a briefing schedule for the remaining parties' cross-motions for summary judgment. The parties filed their cross-motions for summary judgment timely. Additionally, Plaintiff filed two requests for judicial notice of further documents beyond the official administrative record. Defendants filed a motion to strike Plaintiff's Exhibits C and D, and filed objections to the inclusion of Plaintiff's Exhibits E and F in the record. Defendants also filed a request for judicial notice of additional documents. It is these matters are that are currently before the Court.

//

//

//

**United States District Court**
For the Northern District of California

3

1    **LEGAL STANDARD**

2         Summary judgment is appropriate when there is no genuine dispute as to material

3    facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

4    *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 982 (9th Cir. 2001).  "A dispute as to a

5    material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict

6    for the non-moving party."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

7    2006).

8         Both parties agree that claims under NEPA are governed by the APA's arbitrary and

9    capricious standard, which permits this Court to set aside agency action only if it is

10   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5

11   U.S.C. § 706(2)(A); *see also Alaska Wilderness League v. Kempthorne*, 548 F.3d 815, 821

12   (9th Cir. 2008).  This standard is widely accepted as deferential to the agency.  *See The*

13   *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008).

14

15   **DISCUSSION**

16        RPCEC claims that Defendants FHWA and DOT violated the National Environmental

17   Policy Act (NEPA) by failing to complete an Environmental Impact Statement (EIS).

18   Specifically, Plaintiff asserts that Defendants failed to comply with the procedural

19   requirements of NEPA in reviewing the environmental impacts of the proposed highway

20   project and the cumulative impacts of the highway project when combined with a nearby

21   casino project.  RPCEC argues that Defendants' review, which resulted in the Environmental

22   Assessment/Finding of No Significant Impact (EA/FONSI), inadequately assessed the

23   project's cumulative impacts.  RPCEC contends that the FHWA and DOT must complete an

24   EIS because there are substantial questions about whether the cumulative effects of the

25   highway and casino projects will significantly affect the environment.  Plaintiff has moved

26   for summary judgment, claiming that the record demonstrates the insufficiency of the review

27   that the Defendants conducted under the APA.  Specifically, Plaintiff argues that Defendants

28   did not follow the process articulated in NEPA by 1) improperly weighing the significance of

United States District Court

For the Northern District of California

4

the project's impacts; 2) failing to assess cumulative impacts of another nearby project; and 3) failing to prepare an EIS.

Defendants filed a cross-motion for summary judgment, arguing that their review adequately considered all relevant information. They argue that they discharged their responsibilities under NEPA since they adequately considered the impact of the Highway Project, and properly considered the cumulative effects of the casino as well, which were minimally known at the time of the consideration of the Highway Project. The parties agree that this case is appropriate for summary judgment, as they agree that there are no disputed material facts.

## I. Administrative Record

First, the Court must determine what record it will review in consideration of these motions for summary judgment. The parties ask the Court to supplement the nine-volume Administrative Record with additional documents. RPCEC asks the Court to take judicial notice of two sets of documents. The first includes two sections of the Federal Register, labeled Exhibits A and B, and a pair of letters, dated May 18 and December 5, 2007, labeled Exhibits C and D, respectively. These letters are to federal and state officials involved in the Highway Project, urging them to consider the cumulative effects of the casino in their consideration of the Project. The second of Plaintiff's submissions is comprised of two scoping reports for the casino project, which are precursor documents to the EIS for the casino. Exhibit E is dated August 2004, and Exhibit F is dated February 2006. Defendants have filed a motion to strike Exhibits C and D and have filed objections to the inclusion of Exhibits E and F in the record, thereby asking the Court to disregard these four exhibits. Defendants have also requested that the Court take judicial notice of three sections of the Federal Register.

Although the Federal Register entries are not part of the administrative record, the Court must take judicial notice of them. Under Federal Rule of Evidence 201(b), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

United States District Court

For the Northern District of California

generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. Rule Evid. 201(d).  The Federal Register is a paradigmatic case of FRE 201(b)(2), as its accuracy is unimpeachable; accordingly, the Court shall take judicial notice of Plaintiff's Exhibits A and B and Defendants' Exhibits 1, 2, and 3.  *See also* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.").

However, taking judicial notice of other materials is not obligatory.  The standard rule in administrative cases requires the reviewing court to confine its inquiry to the administrative record unless there is a reason given to justify the expansion of the record.  *See Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988).  The Ninth Circuit has laid out an array of reasons for which the record might be expanded.  First, the district court may expand the record "when necessary to explain the agency's action" by obtaining "from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."  *Id.* (internal citation and quotation marks omitted).  Second, where "the agency has relied on documents or materials not included in the record," the district court may look beyond the administrative record.  *Id.*  Third, "discovery may be permitted if supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action."  *Id.*

Here, RPCEC does not argue that the administrative record is inadequate to explain the agency decision.  Rather, the Plaintiff claims that the agencies did not account fully for the information before them.  Plaintiff urges this Court to adopt the rule of *Earth Island Institute v. U.S. Forest Service* to admit their supplemental filings.  442 F.3d 1147 (9th Cir. 2006).  In that case, the Ninth Circuit concluded that an expert report outside the administrative record would be admitted because it was "necessary to determine whether the agency has considered all relevant factors and has explained its decision."  *Id.* at 1162.  There, the supplemental material was from an expert whose opinion was used to dispute technical

United States District Court
For the Northern District of California

conclusions on which the agency report was based.  Thus, the supplementation of the record was based on the third possible justification from *Animal Defense Council*.

The rationale from *Earth Island* does not apply to the materials submitted by Plaintiff that Defendants challenge.  RPCEC offers no explanation of how the extra-record materials are "necessary to determine whether the agency has considered all relevant factors."  *Id.*  The letters that comprise Exhibits C and D, dated May 18 and December 5, 2007, were written after the FONSI was completed on November 6, 2006.  This militates against consideration of the letters, since a document received after the completion of an agency action cannot be a factor that was relevant to agency decision-making.

Second, RPCEC has failed to offer a legal justification for why Exhibits C-F are necessary to the determination of this case.  Unlike in *Earth Island*, where the consideration of additional materials was justified as necessary to dispute flawed technical conclusions, here, Plaintiff does not explore the need for these materials.  Furthermore, even if the Court were to look beyond the record and consider Exhibits E and F, these documents only offer greater support for Defendants' position that the state of the casino project was so speculative during the period of drafting the environmental studies on the Highway Project that it was impossible to offer any further cumulative effects analysis.  The scoping reports, Exhibit E and F, demonstrate that the casino was not yet situated and that a final site had not been selected; any cumulative effects would have entailed speculation about the potential synergy between the Highway Project and the as-yet undefined casino project.  As a result, even if the Court were to take judicial notice of these documents, it would only serve to weaken RPCEC's position in this matter.

Accordingly, for these reasons the Court GRANTS Plaintiff's request for judicial notice of Exhibits A and B, DENIES Plaintiff's request for judicial notice of Exhibits C, D, E, and F, GRANTS Defendants' motion to strike Exhibits C and D, SUSTAINS Defendants' objection to the submission of the scoping reports (Exhibits E and F), and GRANTS Defendants' request for judicial notice of Exhibits 1, 2, and 3.  The Court will therefore

**United States District Court**
For the Northern District of California

7

1  confine its review of the agency action in this case to the administrative record and both

2  parties' submissions of excerpts from the Federal Register.

3

4  **II. NEPA Review**

5          NEPA mandates that "all agencies of the Federal Government shall . . . include in

6  every recommendation or report on proposals for legislation and other major Federal actions

7  significantly affecting the quality of the human environment, a detailed statement by the

8  responsible official."  42 U.S.C. § 4332.  Not all projects require such a report, known as an

9  Environmental Impact Statement ("EIS").  The agency must prepare an EIS "when an action

10  is (1) federal, (2) major, and (3) one that would significantly affect the quality of the human

11  environment." *Surfrider Found. v. Dalton*, 989 F.Supp. 1309, 1317 (S.D. Cal. 1998).

12  "[Council on Environmental Quality] regulations require the preparation of an EIS when the

13  proposed agency action is one which 'normally requires an environmental impact statement,'

14  40 C.F.R. § 1501.4(a)(1), and bar consideration of an EIS for certain 'categorical exclusions.'

15  40 C.F.R. § 1501.4(a)(2)." *Id.*  If an EIS is not automatically required, "the agency must

16  prepare an Environmental Assessment to determine whether the environmental impact is

17  significant enough to warrant an EIS."  *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402

18  F.3d 846, 864 (9th Cir. 2005) (citing 40 C.F.R. §§ 1501.3, 1508.9).  "If the action will

19  significantly affect the environment, an EIS must be prepared, while if the project will have

20  only an insignificant effect, the agency issues a FONSI." *Id.* (citing 40 C.F.R. §§ 1501.3,

21  1501.4).

22          The Court considers the agency's Finding of No Significant Impact (FONSI) under

23  the standard set forth in NEPA, reviewing the

24          decision to forego preparation of an environmental impact statement under the
           arbitrary and capricious standard.  We look to whether the agency has: (1)
25          taken a "hard look" at the potential impact of its actions; (2) considered all of
           the relevant factors in its decision; and (3) provided an adequate statement of
26          reasons to explain why a project's impacts are insignificant.  We will not
           substitute our judgment for that of the agency, but must engage in a substantial
27          inquiry and a thorough, probing, in-depth review.

28

United States District Court

For the Northern District of California

*Alaska Wilderness League v. Kempthorne*, 548 F.3d 815, 821 (internal citations and quotation marks omitted).  "A hard look includes considering all foreseeable direct and indirect impacts."  *Earth Island Inst.*, 442 F.3d at 1159 (internal citation and quotation marks omitted).  An agency

> cannot avoid preparing an EIS by making conclusory assertions that an activity will have only an insignificant impact on the environment.  If an agency . . . opts not to prepare an EIS, it must put forth a convincing statement of reasons that explain why the project will impact the environment no more than insignificantly.  This account proves crucial to evaluating whether the [agency] took the requisite hard look at the potential impact of the [action].

*Ocean Advocates*, 402 F.3d at 864 (internal citations and quotation marks omitted).

Whether an action will "significantly affect" the quality of the human environment requires consideration of the meaning of "significantly."  "The regulations give it two components: context and intensity.  40 C.F.R. § 1508.27.  Context refers to the setting in which the proposed action takes place . . . .  *See id.* § 1508.27(a)."  *Id.* at 865.  In the instant case, the context of the proposed agency action is the city of Rohnert Park, a community of over 40,000 people located in Sonoma County.

"Intensity means 'the severity of the impact.'"  *Id.* (citing 40 C.F.R. § 1508.27(b)).  The regulation asks reviewing agencies that are considering intensity to evaluate ten different factors, any one of which "may be sufficient to require preparation of an EIS in appropriate circumstances."  *Id.* (citing *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 731 (9th Cir. 2001)).  The factor raised in this case is cumulative effects, which the regulation defines as "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts.  Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment.  Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts."  40 C.F.R. § 1508.27(b)(7).  Elsewhere in the regulations, cumulative impact is defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of [who] undertakes

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   such other actions.  Cumulative impacts can result from individually minor but collectively

2   significant actions taking place over a period of time."  40 C.F.R. § 1508.7.

3         A number of cases offer specific instruction on the adequacy of cumulative effects

4   analysis in Environmental Assessments and Environmental Impact Statements under NEPA.

5   "A proper consideration of the cumulative impacts of a project requires some quantified or

6   detailed information; . . . [g]eneral statements about possible effects and some risk do not

7   constitute a hard look absent a justification regarding why more definitive information could

8   not be provided."  *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989,

9   993 (9th Cir. 2004) (citation and quotation marks omitted).  This review "must be more than

10  perfunctory; it must provide a useful analysis of the cumulative impacts of past, present, and

11  future projects."  *Id.* at 994 (citation omitted).

12        In *Surfrider Foundation v. Dalton*, 989 F.Supp. at 1324, *aff'd* 196 F.3d 1057 (9th Cir.

13  1999) (summary affirmance validating lower court's reasoning), the District Court affirmed

14  the adequacy of the cumulative effects analysis performed by the government in planning for

15  a military housing complex.  Reasoning that "[t]he term 'reasonably' suggests that the

16  agency must make a good faith effort to consider likely cumulative effects," the court stated

17  that a nearby transportation corridor project that was early in development required agency

18  consideration.  *Id.*  However, the court concluded that just because the project was

19  reasonably foreseeable, it did "not necessarily follow that all of its environmental impacts"

20  required review.  *Id.*  The court observed that it was unclear what shared effects troubled the

21  Plaintiff, noting that any concerns with congestion caused by the housing project would be

22  mitigated by the highway.  *Id.*  The court found that "NEPA does not require an agency to

23  review *every* reasonably foreseeable action; only those actions whose effects, when

24  accumulated with those of the instant proposal, might have negative environmental effects

25  not evident from the proposal when considered alone" and that the agency was not "required

26  to analyze each proposed project in the absence of some evidence as to why that *specific*

27  project is relevant and would warrant individual cumulative effects analysis."  *Id.* (emphasis

28  in the original).  The court clearly stated that "[t]o the extent that the potential effects of the

10

United States District Court

For the Northern District of California

1    [project] are known, the EA attempts to address them." *Id.*  In light of these observations, the

2    Court concluded that although the EA sections on the highway did "not provide any depth of

3    analysis, it is not clear to the Court that any further effects of the proposed highway are

4    sufficiently related and relevant to the proposed housing project to compel additional

5    cumulative effects analysis in the EA." *Id.*  The Court therefore held that the agency's EA

6    was "not defective for want of cumulative effects analysis." *Id.*

7            This analysis and holding is consistent with the Ninth Circuit's holding in *Klamath-*

8    *Siskiyou*, where the Ninth Circuit determined that the EA's consideration of cumulative

9    effects was deficient. 387 F.3d at 997.  There, the defendant agency had subdivided a single

10   tract of forest into four separate sections for purpose of harvest and sale; the agency prepared

11   a separate EA for each of the projects. *Id.* at 992.  The court determined that the cumulative

12   effects analysis was inadequate because it considered each project's small watershed

13   separately, instead of analyzing the effect of the four projects together on the entire local

14   watershed. *Id.* at 994.  The EA observed multiple "slight to moderate" risks of increased run-

15   off, but provided no analysis of how multiple small watersheds with these small risks would

16   interact; it likewise failed to discuss the synergistic effects of habitat destruction in each of

17   the four projects on the northern spotted owl. *Id.* at 996, 997.  It offered no comprehensive

18   discussion of effects, instead confining the bulk of its analysis to a series of tables, many

19   including check boxes instead of an explanation of effects. *Id.* at 994-96.  As a result, the

20   court held that the cumulative effects analysis did not satisfy NEPA. *Id.* at 997.

21           Since these two relevant cases, the Ninth Circuit has further discussed what level of

22   consideration the agency owes to reasonably foreseeable future projects, which the regulation

23   clearly requires the agency to consider.  *See* 40 C.F.R. § 1508.7 ("past, present, and

24   reasonably foreseeable future actions").  "Ninth Circuit precedent defines a 'reasonably

25   foreseeable' action, for which cumulative impacts must be analyzed, to include 'proposed

26   actions.'  Furthermore, [the court has] previously held that an action is 'not too speculative'

27   when the agency issues a press release and Notice of Intent." *N. Alaska Envtl. Ctr. v.*

28   *Kempthorne*, 457 F.3d 969, 980 (9th Cir. 2006) (internal citations omitted).  In *Northern*

United States District Court

For the Northern District of California

1   *Alaska Environmental Center*, the Ninth Circuit considered a challenge to the adequacy of an

2   EIS regarding allocation of oil and gas drilling leases.  *Id.* at 973.  Among the issues raised

3   was the adequacy of the cumulative impacts analysis of reasonably foreseeable actions,

4   which, in this case was an amendment to a regional management plan for which the notice of

5   intent was filed.  *Id.* at 979-80.  The Ninth Circuit explained that in the situation of sequential

6   assessments of cumulative effects, "the issue is one of timing. In the Notice of Intent [for the

7   plan amendment], the agency has in effect given notice that it will consider all impacts,

8   cumulative and site specific, in any modification to the [preexisting] EIS."  *Id.* at 980.  The

9   court thus concluded that the cumulative effects of the two projects together would have to

10  be addressed by the second project's environmental study.  *Id.*

11       In the situation of assessing grazing rights, the Ninth Circuit has held that "[a]

12  cumulative effects analysis of [] future grazing regimes was [] impracticable because the

13  Forest Service had not yet designated the specific grazing allotments at the time it issued the

14  [EIS]."  *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S. Forest*

15  *Serv.*,  549 F.3d 1211, 1220 (9th Cir. 2008).  As to timber sales, the Ninth Circuit has

16  concluded that agencies are "free to consider cumulative effects in the aggregate or to use

17  any other procedure it deems appropriate."  *Id.* at 1218.  Together, *League of Wilderness*

18  *Defenders* and *Northern Alaska Environmental Center* indicate that the temporal relationship

19  between projects may be factored into considerations of precisely what kind of cumulative

20  effects analysis is required in an EA or an EIS, and that the agency has some discretion in

21  determining how to consider cumulative effects.

22       Under these precedent cases, Defendants have discharged their legal burden through

23  the publication of their FONSI.  The agencies were obligated to consider the casino project in

24  their cumulative effects analysis of the Highway Project, since its notice of intent was

25  published on September 29, 2005, prior to the release of the FONSI.  *See N. Alaska Envtl.*

26  *Ctr.*, 457 F.3d at 980.  They clearly did consider the casino, as evidenced by the table

27  provided in the cumulative effects section of the FONSI, which identifies the casino as one

28  of many projects warranting consideration.  Admin. R., Tab 430, at 189.  This section

12

United States District Court

For the Northern District of California

1    provides a succinct and clear analysis of the cumulative effects of the Highway Project and

2    other nearby development on the California tiger salamander and on local water quality.  *Id*

3    at 188-95.  Defendants indicated they intentionally limited their cumulative effects analysis

4    to these two topics, and set out to offer a conceptual, qualitative assessment of cumulative

5    effects.  *Id.* at 188.

6         That Defendants' cumulative effects analysis is not exhaustive does not mean it is

7    inadequate under NEPA.  Under applicable Ninth Circuit precedent, the agencies were

8    entitled to "consider cumulative effects in the aggregate or to use any other procedure it

9    deems appropriate."  *League of Wilderness Defenders*,  549 F.3d at 1218.  This would

10   include the qualitative, conceptual analysis of cumulative effects that Defendants provided,

11   which offered specific information on the locations of California tiger salamanders in the

12   vicinity of the Highway Project, and likewise considered factors affecting local water quality.

13   The agencies were not necessarily obligated to consider all potential environmental impacts

14   of the casino.  *Surfrider*, 989 F.Supp. at 1324.  *Surfrider*'s interpretation of NEPA indicates

15   that agencies only must consider "those actions whose effects, when accumulated with those

16   of the instant proposal, might have negative environmental effects not evident from the

17   proposal when considered alone."  *Id.*  The congestion concerns that Plaintiff raises regarding

18   the casino will be mitigated by the Highway Project, just as in *Surfrider*, where the court

19   approved of an analysis that did not consider all possible environmental impacts.  *Id.*

20        Although the EA itself does not explain why its consideration of the effects of the

21   casino is only in tabular form, the agency has reasonably explained to the Court that the stage

22   of development of the casino project at the time of the publication of the EA was such that a

23   more detailed analysis was impossible.  The Federal Register entries support this assertion.

24   Where the casino was to be sited on the proposed tract of land was an open question as late

25   as March 2007.  *See* 72 Fed. Reg. 10,790, 10791-92 (March 9, 2007).  The final Bureau of

26   Indian Affairs agency determination to acquire the property for the casino was not listed in

27   the Federal Register until May 7, 2008.  73 Fed. Reg. 25,766, 25766-67 (May 7, 2008).

28   Although the notice of intent obligated the FHWA and the DOT to consider the casino

13

**United States District Court**
For the Northern District of California

1   project in its cumulative effects analysis, which they did, speculation would have served no

2   purpose.  To that end, the agencies have shown why "more definitive information could not

3   be provided": there was none available.  *See Klamath-Siskiyou*, 387 F.3d at 993.

4         Furthermore, Ninth Circuit precedent makes clear that this Court may weigh temporal

5   considerations in its assessment of the adequacy of the EA.  Under *Northern Alaska*

6   *Environmental Center*, the issue of timing is clearly within the Court's consideration; a full

7   cumulative effects analysis of the synergistic effects of the casino and the Highway Project

8   will need to be completed in the EIS for the casino, as such an analysis cannot reasonably

9   rely on speculative information about the location and size of the casino.  *See* 457 F.3d at

10   980.  To the extent that the Plaintiff's concerns would have been more properly raised under

11   the rubric of growth-inducing impacts, since it appears that what is actually animating their

12   suit is a fear that the Highway Project will create capacity for growth, thereby enabling the

13   casino project to be built, this is not properly for review under the cumulative effects analysis

14   that is the basis of the Plaintiff's suit.  Accordingly, the Court will not consider the growth-

15   inducing potential of the Highway Project.

16         Therefore, "it is not clear to the Court that any further effects of the proposed [casino]

17   are sufficiently related and relevant to the proposed [Highway P]roject to compel additional

18   cumulative effects analysis in the EA" or to warrant completion of a full EIS.  *Surfrider*, 989

19   F.Supp. at 1324.  As a result, the agencies' action does not rise to the level of arbitrary,

20   capricious, or an abuse of discretion that would permit this Court to set aside the action.   The

21   DOT and FHWA's Finding of No Significant Impact is "not defective for want of cumulative

22   effects analysis."  *Id.*  The Defendant agencies have therefore discharged their obligation

23   under NEPA to determine if the proposed action will significantly affect the environment;

24   having found that the project will have only an insignificant effect, the agency properly

25   issued a FONSI.  *See Ocean Advocates*, 402 F.3d at 864.

26   *//*

27   *//*

28

United States District Court

For the Northern District of California

1 | **CONCLUSION**

2 |      For the reasons stated above, Defendants' motion for summary judgment is

3 | GRANTED and Plaintiff's motion for summary judgment is DENIED.  Further, Plaintiff's

4 | request for judicial notice of Exhibits A and B is GRANTED, Plaintiff's request for judicial

5 | notice of Exhibits C, D, E, and F is DENIED, Defendants' request for judicial notice is

6 | GRANTED, Defendants' motion to strike Exhibits C and D is GRANTED, and Defendants'

7 | objection to Exhibits E and F is SUSTAINED.

8 |      The Clerk shall enter judgment and close the file.

9 |

10 | **IT IS SO ORDERED.**

11 |

12 | Dated:   March 5, 2009

13 | THELTON E. HENDERSON, JUDGE
   UNITED STATES DISTRICT COURT